UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR.,<br><br>     Petitioner,<br><br> v.<br><br>AL RAMIREZ, Warden,<br><br>     Respondent. | Case No. 1:92-cv-00241-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this capital habeas matter is Gerald Ross Pizzuto, Jr.'s Motion for Rule 60(b) Relief From Judgment. (Dkt. 131.) Respondent has filed a Response (Dkt. 140), and Pizzuto has submitted his reply (Dkt. 146). The Court has carefully reviewed the record and the parties' briefing, and it finds that this matter can be resolved on the record without oral argument. D. Idaho L. Civ. R. 7.1.

For the reasons given below, the Court concludes that the United States Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), does not create an extraordinary circumstance that warrants reopening the judgment in this case. Additionally, Pizzuto has failed to show that Respondent's attorneys have committed a "fraud on the court" to justify relief from judgment. The motion will be denied.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND[1]

In late July of 1985, Pizzuto and his three companions – James Rice, William Odom, and Lene Odom – were camping and prospecting in the Ruby Meadows area north of McCall, Idaho. On July 25, after an aborted robbery attempt on two fishermen, Pizzuto forced two other campers, Berta Herndon and her adult nephew Delbert Herndon, to go into their cabin at gunpoint, where he beat them in the head with a hammer while they lay helpless on the floor. When James Rice and William Odom approached the cabin, Pizzuto emerged carrying a rifle, a hammer, a revolver, and cowboy boots, and he told them that he had "put those people to sleep, permanently." Rice heard sounds shuffling and snorting sounds coming from inside, so he grabbed a rifle, entered the cabin, and shot Delbert Herndon once in the head while his legs twitched involuntarily on the floor. Rice, Pizzuto, and Odom then divided the Herndons' property and buried their bodies in shallow graves.

Based on these events, Pizzuto was charged, tried, and convicted of two counts of murder in the first degree, two alternative counts of felony murder, one count of robbery and one count of grand theft. (State's Lodging A-1, pp. 988-1088.) After an aggravation and mitigation hearing, District Judge George R. Reinhardt, III, sentenced him to death on May 27, 1986. (State's Lodging A-5, pp. 1309-16.)

---

[1] The parties are familiar with the long history of this case, and the facts will be recited here only to the extent necessary to resolve the pending motion. For that reason, the Court will not recount every post-conviction petition or collateral attack that Pizzuto has filed in the state courts over the years, nor will it discuss the *Atkins* proceeding that is currently pending on appeal in the Court of Appeals for the Ninth Circuit.

**MEMORANDUM DECISION AND ORDER - 2**

James Rice and William Odom each pled guilty to reduced charges, testified against Pizzuto at his trial, and received lesser prison sentences. (State's Lodging A-2, pp. 377-432, 507-45; A-3, pp. 546-65; A-16, pp. 1775-76.) The charges against Lene Odom were dismissed, and she also testified at Pizzuto's trial. (State's Lodging A-2, pp. 437-38.)

In accordance with Idaho's accelerated capital post-conviction and appellate procedure at the time, Pizzuto's trial attorneys, Nick Chenoweth and Scott Wayman, filed a petition for post-conviction relief on his behalf after sentencing, and they did not raise claims of ineffective assistance of trial counsel. (State's Lodging B-1, pp. 1-2, 65-66.) After an evidentiary hearing, Judge Reinhardt denied all relief. (State's Lodging B-1, pp. 153-59; B-3, pp. 103-06; B-4, pp. 12-17.) On appeal, the Idaho Supreme Court vacated Pizzuto's robbery conviction but affirmed the murder convictions, death sentence, and the district court's order denying post-conviction relief. *State v. Pizzuto*, 810 P.2d 680 (1991).

With the assistance of new counsel, Pizzuto initiated this federal habeas action in 1992, and the case was assigned to District Judge Alan A. McDonald from the Eastern District of Washington. (Dkt. 63.) In denying relief, Judge McDonald entered two dispositive orders that are relevant to Pizzuto's pending Rule 60(b) motion.

First, in a 1996 order addressing procedural default matters, Judge McDonald concluded that all of Pizzuto's ineffective assistance of trial counsel claims had been defaulted. (Dkt. 78, pp. 56-77.) But Judge McDonald found that Pizzuto had established "cause" and prejudice to overcome the default as to those claims because Chenoweth and

**MEMORANDUM DECISION AND ORDER - 3**

Wayman had continued to represent Pizzuto in the initial post-conviction action, creating a conflict of interest that prevented them from accusing themselves of being ineffective at trial. (*Id.*) Judge McDonald also excused Pizzuto's default of his claim of ineffective assistance of counsel on direct appeal after finding that the state's procedural bar was inadequate to prevent review of that claim. (*Id.* at 67-68.) Consequently, all of the ineffective assistance of counsel claims that Pizzuto had raised in his First Amended Petition would be heard on their merits under *de novo* review in the federal habeas proceeding.

In that same opinion, Judge McDonald discussed Pizzuto's contention that Nick Chenoweth's performance throughout the state court proceeding was hampered by a conflict of interest because he had formerly employed Judge Reinhardt in his law office and because continued to be personal friends with the judge.[2] (Dkt. 78. at 77-82.) Judge McDonald recognized that Pizzuto relied on this supposed conflict of interest to serve both as cause for the default of his other claims and as a freestanding basis for habeas relief in Claim 20 of the First Amended Petition. (*Id.* at 81.) Judge McDonald determined that the claim lacked substance in either context because Pizzuto "fails to demonstrate specifically the manner in which any alleged conflict of interest adversely impacted the proceedings," and because the record contradicted the allegation that Chenoweth was afraid to challenge Judge Reinhardt's impartiality. (*Id.* at 78-82.)

---

[2] This alleged conflict is factually distinct from the conflict of interest that Judge McDonald found to exist to excuse the default of ineffective assistance of trial counsel claims.

**MEMORANDUM DECISION AND ORDER - 4**

One year later, Judge McDonald denied relief on the remaining claims in the First Amended Petition. (Dkt. 89.) In that order, he carefully addressed all of Pizzuto's claims of ineffective assistance of trial and appellate counsel and concluded that none of those claims were meritorious. (*Id*. at 70-201.) Judgment dismissing the action was entered on April 7, 1997. (Dkt. 90.)

On appeal, the Ninth Circuit Court of Appeals affirmed the District Court, and, in doing so, it likewise addressed the merits of Pizzuto's claims of ineffective assistance of trial and appellate counsel. *Pizzuto v. Arave*, 280 F.3d 949, 954-969 (9th Cir. 2002), *dissent amended in part by* 385 F.3d 1247 (9th Cir. 2004). Like Judge McDonald, the majority on the appellate panel found Pizzuto's claim that Chenoweth suffered from a conflict of interest due to a personal relationship with Judge Reinhardt to be without merit and would not serve as cause to excuse any default. In rejecting the issue, the panel wrote that "Pizzuto's counsel moved for a new trial and to disqualify Judge Reinhardt from participating in further proceedings based on a charge of judicial misconduct, and challenged Judge Reinhardt's lack of partiality during the sentencing phase in Pizzuto's amended first petition for post-conviction relief." *Id*. at 975-76. In light of Chenoweth's actions, the panel found that Pizzuto had not shown an actual conflict of interest, and it would not presume that one existed. *Id*. at 976.

In 2005, asserting that he had discovered new evidence, Pizzuto returned to state court with a successive post-conviction petition. He raised a number of claims that

centered primarily on (1) evidence of a previously undisclosed "secret" plea agreement between James Rice and the prosecutor, which was supposedly finalized in an early morning, off-the-record meeting at a restaurant between Rice's attorney, the prosecutor, and Judge Reinhardt; and (2) a "mysterious transformation" of the physical evidence found in the Herndons' cabin before trial, the collection of which Pizzuto alleged had been covertly orchestrated by Judge Reinhardt and Sheriff Randy Baldwin. (State's Lodging L-2, pp. 386-407.) The petition was summarily dismissed, and the Idaho Supreme Court affirmed. *Pizzuto v. State*, 233 P.3d 86, 91-95 (Idaho 2010).

Relying on similar allegations, Pizzuto next submitted a motion in the Ninth Circuit Court of Appeals to file a second or successive habeas corpus petition in this Court under the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(b). *Pizzuto v. Blades*, 673 F.3d 1003, 1007 (9th Cir. 2012). In a written decision denying the motion, the panel first turned aside Pizzuto's claim of judicial bias against Judge Reinhardt as an "old" claim that had been raised previously in the habeas matter. *Id*. at 1008.

The panel also evaluated Pizzuto's "new" claims based on the alleged secret deal between Rice, the trial prosecutor, and Judge Reinhardt, and the implication that Judge Reinhardt was involved in the fabrication of physical evidence at the Herndons' cabin. The panel noted that the allegations, if true, "raise troubling issues about Pizzuto's trial," but it nonetheless concluded that Pizzuto had not met the demanding AEDPA standard to

**MEMORANDUM DECISION AND ORDER - 6**

show by clear and convincing evidence that no reasonable factfinder would now find him guilty. *Id*. at 1009-10. According to the panel, even if Rice's testimony were thoroughly discredited (and Pizzuto's sister's testimony were discounted because of new evidence that she was mentally unstable at trial), the other incriminating evidence was more than sufficient to convict Pizzuto:

> Even if the testimony of Rice and Angelinna were completely removed from consideration, there was very strong evidence of guilt: Pizzuto had Delbert Herndon's belongings. He tied Bacon [a robbery victim] with shoelaces in a similar manner as the Herndons had been tied, calling himself a "highwayman" in both cases. Odom testified that Pizzuto claimed to "put those people to sleep permanently." Both victims had deadly blows to the head consistent with being caused by a hammer, and Odom saw Pizzuto with a hammer. Considering the weight of this other evidence, we conclude that Pizzuto has not shown by clear and convincing evidence that no reasonable factfinder would have found him guilty as required by § 2244(b)(2)(B)(ii).

*Id*. at 1010-11. The panel further concluded that Pizzuto had not shown his actual innocence of the aggravating circumstances necessary to support his death sentence. *Id*. at 1011.

Following the Ninth Circuit's adverse decision, Pizzuto returned to this Court with his pending motion for relief from the 15-year-old judgment. (Dkt. 131.) Because Judge McDonald has since died, the case has been reassigned to the undersigned District Judge. (Dkt. 138.)

In his motion, Pizzuto requests the Court to reopen the judgment and review the merits of Claims 13, 14, and 20, which Judge McDonald had dismissed as procedurally

**MEMORANDUM DECISION AND ORDER - 7**

defaulted. (Dkt. 90, p. 1.) In support, he relies on two theories. First, he asserts that the law of procedural default changed dramatically in 2012 when the Supreme Court decided *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), and that under *Martinez* he is entitled to have Claims 13, 14, and 20 reviewed on the merits because Chenoweth and Wayman were ineffective during the original post-conviction proceeding, where those claims were supposedly defaulted. Second, he claims that the State's representatives in this habeas corpus matter have committed "fraud" on the Court through "intentional and/or reckless suppression and misrepresentation of critical facts calling into question the integrity of the proceedings." According to Pizzuto, Respondent's counsel either knew or should have known about Rice's "secret" plea bargain and Judge Reinhardt's off-the-record conduct in this case, but they did not disclose those facts to the Court. (*Id*. at 2.)

As explained below, neither of these arguments establishes the type of rare and extraordinary circumstances that would warrant setting aside the judgment.

## PIZZUTO IS NOT ENTITLED TO RELIEF BASED ON *MARTINEZ*

### 1.    Standard of Law

Federal Rule of Civil Procedure 60(b) entitles the moving party to relief from judgment on several grounds, including the catch-all category "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6). A motion seeking relief from judgment under subsection (b)(6) must be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Pizzuto's *Martinez* argument is brought under Rule 60(b)(6).

**MEMORANDUM DECISION AND ORDER - 8**

Rule 60(b)(6) should be used "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). Accordingly, the Rule allows relief only when a party can establish that "extraordinary circumstances prevented [it] from taking timely action to prevent or correct an erroneous judgment." *Id*.

### 2.    The New Limited Exception to Default Based on Ineffective Assistance of Post-Conviction Counsel – *Coleman* to *Martinez*

A claim that rests upon an independent and adequate state law ground is procedurally defaulted can be reviewed on the merits only if the petitioner can establish a valid cause for the default and show actual prejudice, or if the petitioner can show that he is actually innocent.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986)*; Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). To show "cause," the petitioner must demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue.  *Id.* at 488.

For many years, the Supreme Court and lower courts have turned aside arguments that an appointed attorney's errors in a state post-conviction proceeding can establish cause to excuse a petitioner's failure to properly exhaust a claim in the state courts. The leading case on this subject is *Coleman v. Thompson*, 501 U.S. 722 (1991). There, Supreme Court rejected a capital habeas petitioner's argument that his post-conviction counsel's failure to file a timely notice of appeal, which resulted in the default of his

ineffective assistance of trial counsel claims, established a valid cause. *Id*. at 751-53.

Relying on *Murray* and other cases, the Court in *Coleman* held that because it had never before found that there is a constitutional right to counsel in state post-conviction matters, a claim of ineffective assistance of post-conviction counsel cannot excuse the petitioner's failure to raise a claim properly in state court. *Id*. at 753. In reaching that conclusion, the Court chose not to decide whether a limited exception may exist when a post-conviction proceeding represents the first opportunity under state law for a convicted state defendant to litigate claims of ineffective assistance of trial counsel. *Id*. at 755. The Ninth Circuit and other circuits later determined that such an exception does not exist, and the issue was settled in this Circuit. *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996); *Bonin v. Calderon*, 77 F.3d 1155, 1159 (9th Cir. 1996).

Twenty years later, the Supreme Court recognized "a narrow exception" to *Coleman*'s general rule. In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the Court determined that ineffective assistance of post-conviction counsel – while not stating an independent constitutional claim – can be a sufficient "cause" to excuse defaulted claims of ineffective assistance of trial counsel under limited circumstances.

In setting out the rule, the Court described its limitations. First, the rule applied only to defaulted claims of ineffective assistance of trial counsel, and only when those claims were defaulted in an "initial-review collateral proceeding" where the petitioner was given his first opportunity under state law to raise such claims. *Martinez*, 132 S.Ct. at

**MEMORANDUM DECISION AND ORDER - 10**

1315. Second, "[w]hen faced with the question whether there is cause for an apparent

default, a State may answer that the ineffective-assistance-of-trial-counsel claim is

insubstantial, *i.e.*, it does not have any merit or it is wholly without factual support, or that

the attorney in the initial-review collateral proceeding did not perform below

constitutional standards." *Id*. at 1319.

### 3.   The *Martinez* Rule Does Not Apply to Claims 13 and 14

In Claim 13, Pizzuto alleged that Judge Reinhardt was biased, as seen by his

hostile questioning of witnesses at the sentencing hearing and by the statements that he

allegedly had made to Pizzuto's family memebers. (Dkt. 29, p. 16.) In Claim 14, Pizzuto

asserted that he was denied his right to a fair trial because Judge Reinhardt had ex parte

contact with jurors. (*Id*. at 17.) Notably, in neither of these claims did Pizzuto allege that

he had been deprived of his right to the effective assistance of counsel. To the contrary,

his allegations of ineffective assistance of counsel were included in Claims 11, 12, 18,

and 21. (Dkt. 29.) Judge McDonald and the Ninth Circuit addressed each of those claims

in the course of the habeas proceeding and found them to be lacking in merit for a variety

of well-explained reasons.

The Supreme Court did not extend its new rule in *Martinez* to any type of

defaulted claim other than ineffective assistance of trial counsel. *See Martinez*, 132 S.Ct.

at 1315 ("[t]his opinion qualifies *Coleman* by recognizing a narrow exception: Inadequate

assistance of counsel at initial-review collateral proceedings may establish cause for a

prisoner's procedural default of a claim of ineffective assistance at trial"); *see also Fabricio v. Artus*, 2013 WL 28487, *4 (S.D.N.Y. 2013) (rejecting *Martinez* as "irrelevant" to a defaulted Confrontation Clause claim). Accordingly, *Martinez* simply does not give Pizzuto a new argument for cause to excuse the default of Claims 13 and 14, and the change in the law is not an extraordinary circumstance warranting overturning the judgment as to those claims.

In an attempt to avoid this result, Pizzuto now shifts his focus from the *trial judge*'s bias and ex parte contacts as the independent grounds for relief in Claims 13 and 14 to his counsel's supposed ineffectiveness in not *challenging* the judge's bias and ex parte contacts. While he made a similar argument long ago to establish cause for his default (framed as a conflict of interest), he did not plead these additional facts in Claim 13 or 14 as a reason to grant habeas relief on the merits. His change of course at this late date is the equivalent of constructively amending the petition to add new allegations and a new legal theory. So construed, the Rule 60(b) motion would be an impermissible second or successive petition for habeas relief that is barred under 28 U.S.C. § 2244(b)(3) without approval from the Ninth Circuit Court of Appeals. *See Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005) (holding that a motion that seeks to add a new ground for relief constitutes an "application for habeas relief" that is governed by § 2244(b)).

### 4.    Claim 20 is Not Substantial

Unlike Claims 13 and 14, defaulted Claim 20 can be construed as a Sixth Amendment, ineffective assistance of trial counsel claim. But while the claim was

**MEMORANDUM DECISION AND ORDER - 12**

technically dismissed as procedurally defaulted, both Judge McDonald and the Ninth

Circuit also discussed the substance of this claim long ago and concluded that it lacked

merit.

In Claim 20, Pizzuto asserted:

> [Pizzuto] was deprived of his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution because his chief attorney at trial and on appeal, Nick Chenoweth, had a close relationship with the trial and sentencing judge, George Reinhardt, which included Mr. Chenoweth having employed Judge Reinhardt at one time and the two men taking vacation trips together. Mr. Chenoweth did not disclose this relationship to petitioner during trial or appeal.

(Dkt. 29, p. 21.) The parties and the Court construed this claim as alleging that

Chenoweth suffered from a conflict of interest because of his personal and professional

ties to Judge Reinhardt. (Dkt. 72, pp. 50-53; Dkt. 78, pp. 81-82.)

As an initial matter, Respondent argues that a conflict of interest claim is

distinguishable from an ineffective assistance of trial counsel claim and that *Martinez* is

inapplicable to excuse the default of Claim 20. Respondent is correct only insofar as

different legal standards apply to resolve a conflict claim vis-a-vis a "routine" ineffective

assistance of trial counsel claim on the merits. But the Court is not persuaded that

*Martinez* has no applicability to a defaulted conflict of interest claim, which is merely

another type of the same underlying Sixth Amendment violation. *See*, *e.g.*, *Wood v.*

*Georgia*, 450 U.S. 261, 271 (1981) ("[w]here a constitutional right to counsel exists, our

Sixth Amendment cases hold that there is a correlative right to representation that is free

**MEMORANDUM DECISION AND ORDER - 13**

from conflicts of interest"). This is so because a lawyer with an actual conflict of interest at trial does not provide a defendant his constitutional right to the effective assistance of counsel. Therefore, the Court concludes that inadequate assistance of post-conviction counsel can excuse the default of such a claim if *Martinez*'s other conditions were satisfied.

To overcome a default under *Martinez*, however, a habeas petitioner must "demonstrate that the underlying ineffective-assistance-of-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that it has some merit." *See Martinez*, 132 S.Ct. at 1310. Both this Court and the Ninth Circuit Court of Appeals have already determined that Claim 20 is not a "substantial" claim. In addressing the conflict argument both as a cause to excuse defaulted claims and effectively on the merits, Judge McDonald found that Pizzuto's allegations that Chenoweth held back in his advocacy due to a friendship with the trial judge were wholly speculative and contradicted by Chenoweth's actual conduct in the case. (Dkt. 78, p. 82.) He concluded that "this claim rests on a conflict of interest which [Pizzuto] simply cannot demonstrate." (*Id.*)

Similarly, citing the legal standard governing conflicts from *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Ninth Circuit explained that "Pizzuto does not show how this kind of relationship amounts to an actual conflict of interest such that counsel would have not challenged Judge Reinhardt's behavior." *Pizzuto*, 280 F.3d at 975. In fact, Chenoweth had challenged Judge Reinhardt's behavior, and the Ninth Circuit determined that it would not presume a conflict where none had been demonstrated. *Id.* at 976.

**MEMORANDUM DECISION AND ORDER - 14**

In short, both the lower court and the appellate court reviewing this claim found that Pizzuto had offered nothing more than speculation that Chenoweth's basic decision-making was affected by a vague duty of loyalty that he felt to Judge Reinhardt. That state of affairs remains unchanged to this day; this supposed conflict of interest issue is entirely speculative.

Pizzuto disagrees with this conclusion and contends that he was not allowed critical evidentiary development to show the true nature and extent of Chenoweth's conflict, but this is nothing more than a request to reconsider an argument that he has already lost. (Dkt. 131, pp. 24-27; Dkt. 146, pp. 14-15.) Pizzuto also muddies the waters by conflating his argument for "cause" (ineffective assistance of post-conviction counsel under *Martinez* ) with the underlying substantive claim (Chenoweth's conflict of interest throughout the proceedings due to his relationship with Judge Reinhardt). Because a claim that Chenoweth suffered from a conflict of interest on these facts lacks merit (Claim 20), it is unnecessary to resolve whether his failure to raise the conflict issue in the state courts was due to his ineffectiveness in the post-conviction action.

Moreover, to the extent that Pizzuto attacks the substance of the Court's disposition of Claim 20, he is effectively requesting that relief be granted on the merits, which would transform the Rule 60(b) motion into a successive petition that is barred under 28 U.S.C. § 2244(b). *See Gonzalez*, 545 U.S. at 532 (noting that a Rule 60(b) motion can "be said to bring a 'claim' if it attacks the federal court's previous resolution of a claim on the merits, [which is] effectively indistinguishable from alleging that the

**MEMORANDUM DECISION AND ORDER - 15**

movant is, under the substantive provisions of the statutes, entitled to habeas relief.")

For these reasons, the Court finds that Pizzuto has not shown that the intervening change in the law brought about by *Martinez* creates an extraordinary circumstance that warrants a re-examination of the judgment as to Claims 13, 14, or 20.

## PIZZUTO HAS FAILED TO ESTABLISH THAT RESPONDENT'S ATTORNEYS HAVE COMMITTED A FRAUD ON THE COURT

As an alternative basis for relief, Pizzuto claims that Respondent's attorneys have concealed critical facts and evidence from this Court that would have established Judge Reinhardt's "corruption" and  the trial prosecutor's suppression of exculpatory evidence relating to James Rice. Respondent's counsel defends against the accusation by calling it "outrageous," and he "categorically denies Pizzuto's contention in its entirety." (Dkt. 140, pp. 42, 44.) The Court is persuaded that Pizzuto has not shown, and could not show, that a fraud has been committed that calls into question the integrity of the Court's judgment.

### 1.    Standard of Law

Under Rule 60(b)(3) of the Federal Rules of Civil Procedure, the Court "may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an opposing party." *Id*. The deadline for bringing a motion under Rule 60(b)(3) for fraud, misrepresentation, or misconduct by the other party expires one year after the entry of judgment. Fed. R. Civil P. 60(c)(1). That deadline has long since passed in this case.

**MEMORANDUM DECISION AND ORDER - 16**

Apart from Rule 60(b)(3), a court retains the inherent power to set aside its judgment at any time for "fraud on the court." Fed. R. Civil P. 60(d)(3). The Ninth Circuit has held that acts of fraud on the court can also constitute extraordinary circumstances meriting relief under the catchall provision in Rule 60(b)(6). *Latshaw v. Trainer Wortham & Co.*, *Inc.*, 452 F.3d 1097, 1104 (citing *Intermagnetics America*, *Inc.*, 926 F.2d 912, 916-17 (9th Cir.1991).

A claim of fraud on the court must be construed narrowly, and the burden is on the party seeking relief to show an "'unconscionable plan or scheme which is designed to improperly influence the court in its decision.'" *Latshaw*, 452 F.3d at 1104 (citing *Abatti v. Comm'r*, 859 F.2d 115, 118 (9th Cir. 1988). Such a claim "'embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'" *Latshaw*, 452 F.3d at 1104 (citing *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (quoting 7 J. Moore 7 J. Lucas, *Moore's Federal Practice* ¶ 60.33, at 515 (2d ed. 1978)). Fraud in this context is also commonly understood to include "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated," and generally excludes "less egregious misconduct, such as non-disclosure of facts allegedly pertinent to the matter before [the court]." *Fierro v. Johnson*, 197 F.3d 147, 154 (5th Cir. 1999).

Citing a Sixth Circuit case, *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352-53 (6th Cir.

**MEMORANDUM DECISION AND ORDER - 17**

1993), Pizzuto contends that this Court may grant relief upon a showing that opposing counsel had a "reckless disregard" for the truth rather than engaging in intentional misconduct. (Dkt. 131, p. 28.) Respondent counters that *Demjanjuk*'s recklessness standard is not the standard in the Ninth Circuit, and that it represents a minority view among all courts. (Dkt. 140, p. 45.)

The Court is inclined to agree with Respondent's position. Vacating a settled judgment runs counter to the strong public interest in finality, and such an extraordinary remedy demands an extraordinary showing. Additionally, the Ninth Circuit has pronounced that a claim of fraud on the court must be narrowly construed, with a high burden on the party seeking relief to show "an unconscionable plan or scheme that is designed to improperly influence the court in its decision." *Latshaw*, 452 F.3d at 1104. An "unconscionable scheme or plan" implies a knowing and intentional misrepresentation rather than a reckless disregard for the truth.

In any event, as explained below, the Court concludes that Pizzuto's fraud claim is held together largely by speculative assertions rather than evidence from which one could reasonably conclude that Respondent's counsel either acted with a reckless disregard for the truth or committed an intentional fraud on the Court. As a result, his claim fails under either standard.

## 2.    Discussion

Pizzuto's argument relies heavily on the new evidence that he asserts shows misconduct by the trial prosecutor and trial judge in state court, but it is exceptionally thin

**MEMORANDUM DECISION AND ORDER - 18**

on evidence of fraud in front of this Court on habeas review.

In particular, Pizzuto's underlying claims rest on evidence that he construes as establishing a secret plea agreement between James Rice and the State, ostensibly influenced and guided by Judge Reinhardt. Pizzuto's counsel obtained an affidavit from Rice in 2005, in which Rice asserted that his understanding of the agreement was that if he pled guilty to second degree murder, he would be sentenced to no more than 20 years and would serve less time than that. A separate affidavit from Rice's ex-wife reflects that this is what Rice told her at the time. Pizzuto's counsel also unearthed handwritten notes and the billing statements of Rice's trial counsel, which seem to reflect an early morning meeting in January of 1986 between Judge Reinhardt, the trial prosecutor, and Rice's counsel to discuss a plea agreement. Rice eventually pled guilty and testified at Pizzuto's trial, where he stated that he "could spend the rest of [his] life in prison," but he did not volunteer that he actually believed that he would serve less than 20 years. (State's Lodging A-16, p. 1776.)

Pizzuto further contends that Judge Reinhardt orchestrated the collection of evidence at the Herndons' cabin to incriminate him, but this part of his claim is murky. He alleges that the police did not discover blood upon an initial examination, but after Judge Reinhardt requested the Sheriff to heat the cabin for a new inspection in the winter, the State's criminalist mysteriously discovered blood and other physical evidence. From these and other circumstances, he suggests that Judge Reinhardt and the Sheriff were involved in some type of conspiracy to fabricate evidence.

**MEMORANDUM DECISION AND ORDER - 19**

Thus articulated, the Court understands the nature of the underlying claims of judicial and prosecutorial misconduct in state court, but it is much more difficult to pin down how Pizzuto believes a fraud was perpetrated on *this* Court, and by whom. Because it is this Court's judgment that is at issue, the focus must be on what an officer of this Court did or did not do in *this* proceeding. *See Fierro*, 197 F.3d at 153-54 ("[I]t is important to keep in mind that in reviewing the district court's denial of the motion to vacate, we deal only with allegations of fraud on the *federal courts*, not any fraud that may have been perpetrated upon the state courts.") (emphasis in original); *see also Gonzalez v. Secretary for Dep't of Corr.*, 366 F.3d 1253, 1284-85 (11th Cir. 2004) (the fraud exception "applies where the fraud was perpetrated on the federal court and resulted in the denial of federal habeas relief, not where the fraud was perpetrated on a state court.")

To be entitled to relief, Pizzuto must prove an "an unconscionable plan or scheme" by opposing counsel, "designed to improperly influence the court in its decision." *Latshaw*, 452 F.3d at 1104. To meet this standard, he must come forward with compelling evidence tending to show that Respondent's attorneys knew of the same or similar evidence on which Pizzuto relies to support his claim that the state trial process was corrupt and unfair, and that they concealed or misrepresented that information from the Court (or, under the *Demjanuk* standard, at least recklessly disregarded facts that would obviously point to those same conclusions).

That type of evidence sorely lacking, and Pizzuto is unable to counter

**MEMORANDUM DECISION AND ORDER - 20**

Respondent's counsel's categorical denial with proof or even an offer of proof. His claim is instead built on assumptions and conclusory accusations that opposing counsel engaged in deceptive and unethical conduct. For instance, there is no substantiation that Respondent's counsel knew or "should have known" of any alleged secret plea deal brokered by Rice's counsel with the trial judge's involvement at a restaurant in the early morning hours on a day in January of 1986, that Rice lied at trial about the deal, or that the judge supposedly "maintained an unethical and corrupt relationship" with the Sheriff "which likely resulted in fabricated physical evidence." (Dkt. 131, p. 24.) In an effort to establish these points, Pizzuto claims that Respondent's counsel have repeatedly denied that the Judge Reinhardt was biased or engaged in other improprieties, and have used other "procedural obstacles" to block his path, but he has not explained why it is self-evident that Respondent's attorneys were acting in bad faith or were perpetrating a fraud on the Court when they defended against his claims in this way. Pizzuto instead jumps from an allegation of judicial and prosecutorial misconduct in the state criminal prosecution in the 1980s to a claim that different attorneys from a different state agency committed a fraud in federal court, without building an evidentiary bridge to connect the two.

   Nor is the Court persuaded that *Thomas v. Goldsmith*, 979 F.2d 746, 749-50 (9th Cir. 1992), helps Pizzuto close the gap. In *Thomas*, the Ninth Circuit held that state officials have a continuing duty under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory evidence in a federal habeas proceeding to give the petitioner an opportunity

**MEMORANDUM DECISION AND ORDER - 21**

to establish his actual innocence. *Id*. at 749-50. In this case, the Ninth Circuit has already determined that the new evidence that Pizzuto claims was concealed would not establish his innocence because of other very strong evidence of his guilt. *Pizzuto v. Blades*, 673 F.3d 1003, 1010 (9th Cir. 2012).

More important, the United States Supreme Court has disavowed the reasoning in *Thomas* and has held that *Brady* involves a due process right at trial, when the defendant is still presumed innocent, and does not extend to a right of disclosure in a post-conviction or collateral action. *District Attorney's Office v. Osborne*, 557 U.S. 52, 68 (2009). Even if the *Brady* rule extended to post-conviction, Pizzuto has not explained how a violation of that rule, which can involve the inadvertent failure to turn over favorable evidence to the defense, is necessarily the equivalent of "the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated." *Fierro*, 197 F.3d at 154.

Finally, the Court concurs with Respondent that Pizzuto has not been diligent in raising fraud as a ground for relief from judgment until all other avenues were closed to him. He developed this evidence no later than 2005, and yet he decided to take his claims to the state courts first, and then to the Ninth Circuit in a motion to proceed with a second or successive petition, and only when those actions did not succeed did he return to this Court with a Rule 60(b) motion. At its core, Pizzuto's motion is essentially a camouflaged attempt to circumvent the Ninth Circuit's ruling denying him leave to proceed with his new claims by repackaging them as a "fraud" on this Court.

**MEMORANDUM DECISION AND ORDER - 22**

Although the motion lacks merit, this Court, like the Ninth Circuit, is troubled by an allegation that the presiding judge may have been involved in an off-the-record meeting to discuss a possible plea bargain for one of Pizzuto's accomplices, and it is unimpressed by Respondent's wave-of-the-hand dismissal that such a claim is "frivolous beyond debate." (Dkt. 140, p. 46.) Nevertheless, a potentially "non-frivolous" claim does not equal "fraud" on this Court.

For the reasons given, the Court concludes that Pizzuto has not carried his heavy burden to establish that Respondent's counsel engaged in an unconscionable scheme or plan to perpetrate a fraud on the Court such that the 1997 judgment must be reopened. The motion will be denied.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion for Rule 60(b) Relief from Judgment (Dkt. 131) is DENIED.

2. To the extent a certificate of appealability is needed for an appeal to the Court of Appeals for the Ninth Circuit, *see United States v. Washington*, 653 F.3d 1057, 1065 n.8 (9th Cir. 2011) (noting open question whether COA required to appeal denial of legitimate Rule 60(b) motion), the Court finds that reasonable jurists could debate its resolution of Petitioner's Motion for Rule 60(b) Relief from Judgment. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, the Court grants

**MEMORANDUM DECISION AND ORDER - 23**

a certificate of appealability on the issues decided by the Court. Upon the

filing of a notice of appeal, the Clerk of Court shall forward to the Court of

Appeals a copy of this Memorandum Decision and Order and the notice of

appeal.

DATED:  **March 22, 2013**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 24**